FILED
United States Court of Appeals
Tenth Circuit

December 20, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In the Matter of:  PATRICIA ANN
EVANS,

         Debtor,

–––––––––––––––––––––––––––––

PATRICIA ANN EVANS,

         Appellant,

      v.

THE BANK OF NEW YORK TRUST
COMPANY, N.A., as successor to
JPMorgan Chase Bank, N.A., as
Trustee,

         Appellee.

No. 12-1223

(BAP No. 10-031-CO)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **EBEL**, and **HARTZ**, Circuit Judges.

---

    [*]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Patricia Ann Evans appeals an order by the Bankruptcy Appellate Panel of the Tenth Circuit (BAP) denying her motion to set aside three earlier orders of the BAP on the ground that the orders were void because the BAP lacked jurisdiction over her original appeal to that court. One of the three earlier orders denied Evans's appeal on the merits; one denied rehearing on the merits determination; and one sanctioned Evans for filing a frivolous appeal. Although we agree with Evans that her original appeal was moot when decided, we hold that her challenge to the first two BAP orders is a moot question over which we lack jurisdiction, and that the BAP's sanctions order is not subject to collateral attack on the ground raised by Evans. Accordingly, we dismiss the appeal in part and affirm the BAP in part.

I.    BACKGROUND

This appeal has its origins in a house located at 1933 South Downing Street in Denver, Colorado. The house formerly belonged to Evans's daughter, Vicki Dillard-Crowe, who is not a party to this case. When these proceedings commenced, Evans resided in the home as a guest. The Bank of New York Trust Co. had purchased the house at a foreclosure auction and initiated eviction proceedings in Colorado state court against Dillard-Crowe and any other occupants. The state court granted the Bank a judgment of possession on February 11, 2010. The next day, Evans filed the Chapter 7 bankruptcy petition that eventually led to this appeal, listing the house as her primary residence

although she did not own it.  The Bank sought relief from the automatic stay, *see*

11 U.S.C. § 362(d), in order to proceed against the house.  The district court

granted relief from the automatic stay on May 13, and Evans appealed to the BAP

a day later.

The bankruptcy court granted Evans a discharge on July 9, 2010, before the

BAP issued a decision on Evans's appeal.  In that decision, handed down on

January 4, 2011, the BAP rejected the Bank's argument that because the discharge

had terminated the automatic stay, the appeal was moot.  It affirmed the

bankruptcy court's order granting the Bank relief from the automatic stay.  In

addition, it ordered Evans to show cause why she should not be sanctioned for

filing a frivolous appeal.  It denied her motion for rehearing on February 4; and

on March 11, 2011, it ordered her to pay $4,737.50 as a sanction for filing a

frivolous appeal.

Evans appealed to this court, but her notice of appeal designated only the

February 4, 2011, order denying rehearing.  We dismissed the appeal for lack of

appellate jurisdiction because Evans's discharge from bankruptcy during the

pendency of her BAP appeal mooted any issues relating to the automatic stay.

*See Evans v. Bank of New York Trust Co.* (*In re Evans*) (*Evans I*), 465 F. App'x

763, 767 (10th Cir. 2012).[1]  We held that we were precluded from reviewing the

---

[1] We had authority to order the BAP to vacate its order denying rehearing,
*see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994); but
(continued...)

BAP's January 4, 2011, order affirming relief from the stay and the BAP's March 11, 2011, sanctions order because the notice of appeal did not encompass them. *See id.* at 766–68.

Evans then filed with the BAP a "Motion to Set Aside/Vacate Void Judgment," which invoked Fed. R. Civ. P. 60(b)(4). R., Vol. 1 at 82. She contended that our decision to dismiss her appeal as moot necessarily implied that the BAP had lacked jurisdiction to hear and determine her original appeal and to impose sanctions against her in connection with that appeal. The BAP rejected this motion in an order issued April 23, 2012, stating that the sanctions order was proper even if the case was moot.

## II. DISCUSSION

Evans's motion to the BAP challenged three orders issued by the BAP: the January 4, 2011, order affirming on the merits the bankruptcy court's order granting relief from the stay; the February 4, 2011, order denying rehearing of the merits determination; and the March 11, 2011, order sanctioning her for filing a frivolous appeal. The first two orders no longer have any real-world consequences because there is no longer an automatic stay in the underlying bankruptcy case. Whether the orders were valid is therefore a moot issue that we lack jurisdiction to consider. *See Citizens for Responsible Gov't State Political*

---

[1](...continued)
we did not do so.

-4-

*Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) ("The crucial question [in determining mootness] is whether granting a present determination of the issues offered will have some effect in the real world." (ellipsis and internal quotation marks omitted)); *Evans I*, 465 F. App'x at 767.

The third order is the BAP's order imposing sanctions on Evans. The validity of that order is not a moot issue, and we exercise jurisdiction under 28 U.S.C. § 158(d). Evans did not appeal the order and now mounts a collateral attack on it. She argues that the BAP lacked jurisdiction when it issued the sanctions order and relies on Fed. R. Civ. P. 60(b)(4), which provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (4) the judgment is void." She contends that Rule 60(b)(4) applies to the BAP because of Federal Rule of Bankruptcy Procedure 9024, which states that "Rule 60 F.R.Civ.P. applies in cases under the [Bankruptcy] Code" except in enumerated circumstances not present here.

We need not determine whether Rule 60 applies to BAP proceedings, because our analysis is essentially the same if we simply review Evans's motion to the BAP as a motion to recall the mandate. Federal courts have an inherent power to recall their mandates. *See Calderon v. Thompson*, 523 U.S. 538, 549 (1998) (recognizing inherent power of courts of appeals); 16 Charles A. Wright, et al., Federal Practice and Procedure §3938 (2d ed. 1996) (Federal Practice).

-5-

Rule 60 codifies that authority for federal district courts; and "[a]lthough the Appellate Rules do not include provisions that parallel Rule 60, the courts of appeal have generally adhered to equally strict standards to protect the need for finality and repose." Federal Practice, *supra* at 724–25 (footnote omitted). In *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997), we cited *Greater Boston Television Corp. v. FCC*, 463 F.2d 268 (D.C. Cir. 1971), as "discussing particular grounds for recalling a mandate." *Greater Boston* stated the general rule as "'good cause,'" meaning "the showing of need to avoid injustice," 463 F.2d at 277, although "'exceptional circumstances'" must be shown, *id.* at 278.

We now turn to Evans's challenge to the BAP's sanctions order as "void." In light of our decision on Evans's prior appeal, she may well be correct that the BAP lacked subject-matter jurisdiction to issue the sanctions order. She could have pursued the matter on direct appeal. *See Depex Reina 9 P'ship v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 464 (10th Cir. 1990) (allowing challenge to subject-matter jurisdiction before judgment is final).

Lack of subject-matter jurisdiction does not, however, necessarily render a judgment "void" for purposes of a collateral attack. To the contrary, the law appears to be well-settled that once an order has "bec[o]me final on direct review," the subject-matter jurisdiction of the court issuing the order can almost never be successfully raised. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152

-6-

(2009). In general, "[a] party that has had an opportunity to litigate the question of subject-matter jurisdiction may not reopen that question in a collateral attack upon an adverse judgment." *Id.* at 153 (ellipsis and internal quotation marks omitted).

We have said that a judgment can be collaterally attacked under Rule 60(b)(4) as void for lack of jurisdiction "only where there is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its authority," not when the court merely made "an error of law in determining whether it ha[d] jurisdiction." *Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342, 1346 (10th Cir. 2000) (internal quotation marks omitted). And it is hard to conceive of such a usurpation actually occurring. One leading treatise states, "[I]n almost every case, courts would conclude that an erroneous decision to exercise jurisdiction was within a court's power to determine its own jurisdiction." 12 James Wm. Moore et al., Moore's Federal Practice and Procedure § 60.44[2][d] (3d ed. 2011). The Supreme Court has acknowledged the possibility of collateral attacks, but only in extreme (and highly unlikely) cases. *See Travelers Indem. Co.*, 557 U.S. at 154 n.6 ("This is not a situation, for example, in which a bankruptcy court decided to conduct a criminal trial, or to resolve a custody dispute, matters so plainly beyond the court's jurisdiction that a different result might be called for." (internal quotation marks omitted)).

We recognize that the court in *IAL Aircraft Holding, Inc. v. FAA*, 216 F.3d 1304, 1306 (11th Cir. 2000), stated: "Although it is rather unusual for a court to learn, after its mandate issues, that its prior decision lacked a jurisdictional basis, the few courts confronting this issue uniformly have vacated their prior decisions." But the supporting authority cited by the opinion is slim. *IAL Aircraft* cites *Snow v. United States*, 118 U.S. 346 (1886), in which the Supreme Court held that it had no jurisdiction to hear the case and then vacated the judgment and recalled the mandate in a similar case in which jurisdiction had been lacking but the question of jurisdiction had not been raised or considered, *see id.* at 354–55. The case in which the mandate was recalled, however, had been decided during the same term of court, which gave the Court plenary power to change the judgment. *See id.* at 354 ("[A]s the case was decided at the present term, . . . we have decided to vacate our judgment, and recall the mandate . . . ."); Federal Practice, *supra* at 712–13 (discussing former power of courts over their mandates during term of court). The only other case cited by *IAL Aircraft* in which the mandate was recalled because the case had been moot when decided was the three-sentence order in *United States v. Pressman (In re Grand Jury Proceedings)*, 593 F.2d 906 (9th Cir. 1979).[2] In light of the broad language in

---

[2] *IAL Aircraft* cited *Bumpus v. Clark*, 702 F.2d 826 (9th Cir. 1983), but *Bumpus* says nothing about the court's recalling its mandate; apparently the decision was rendered after a petition for rehearing and the mandate had not previously issued. It also cited *United States v. Londono*, 100 F.3d 236 (2d Cir.

(continued...)

-8-

*Travelers Indem. Co.*, we choose not to follow the earlier lower-court decision in *IAL Aircraft*. We see no exceptional circumstance requiring the BAP to recall its mandate for lack of jurisdiction.

Evans had her opportunity to appeal the BAP's sanctions order, but she did not pursue that relief. We affirm the BAP's denial of Evans's motion to set aside its sanctions order.

## III.   CONCLUSION

We AFFIRM the BAP's decision refusing to set aside its sanctions order and otherwise DISMISS the appeal.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

---

[2](...continued)
1996); but the court in that case ruled that the case was not moot.

No. 12-1223, *Evans v. Bank of N.Y. Trust Co.*

**MURPHY**, Circuit Judge, concurring in the judgment.

The BAP did not abuse its discretion in refusing to recall its mandate. *Calderon v. Thompson*, 523 U.S. 538, 550 (1998) (noting appellate court's power to recall its mandate "can be exercised only in extraordinary circumstances" to prevent "grave, unforeseen contingencies"). Thus, I wholly join the Order and Judgment, with particular emphasis on the holding that this court "need not determine whether Rule 60 applies to BAP proceedings." Majority Op. at 5.

Nevertheless, the concurring opinion contains extensive discussion of the issue expressly not necessary for the resolution of this appeal—namely, the dubious assertion Fed. R. Civ. P. 60(b) is applicable to proceedings in the BAP. Concurring Op. at 1 (opining that "Evans may be correct that Fed. R. Civ. P. 60 applies to BAP proceedings"). For authority, the concurrence relies upon a singular extant opinion, an unpublished decision of the Ninth Circuit providing no analysis. Concurring Op. at 1-2 (citing *Smith v. Webre (In re Smith)*, 335 F. App'x 667, 668 (9th Cir. 2009)). This court has, however, in an unpublished decision, expressed doubt as to the wholesale applicability of the Federal Rules of Civil Procedure to the BAP. *Taumoepeau v. Mfrs. & Traders Trust Co. (In re Taumoepeau)*, 523 F.3d 1213, 1218 (10th Cir. 2008) ("[W]e do not in any way suggest that the Federal Rules of Civil Procedure apply wholesale to proceedings before the BAP."). There is good reason for such doubt. The Federal Rules of Civil Procedure are generally rules governing trial court proceedings, not

appellate proceedings such as bankruptcy appeals, and have a scope and

articulation consistent with such a specific role.[1]  The BAP's own rules are clear:

only Part VIII of the Federal Rules of Bankruptcy Procedure apply to the BAP.

Tenth Circuit BAP L.R. 8018-1.  Thus, by local rule, Rule 60(b) is inapplicable to

BAP proceedings.  Furthermore, Tenth Circuit BAP L.R. 8018-1 is fully

consistent with Federal Rule of Bankruptcy Procedure 8018.  *See* Fed. R. Bankr.

P. 8018 (providing that "[c]ircuit councils which have authorized bankruptcy

appellate panels . . . may . . . make and amend rules governing practice and

procedure for appeals from orders or judgments of bankruptcy judges to the

respective bankruptcy appellate panel").

---

[1]The concurring opinion places great stock in the fact both the D.C. Circuit and Charles A. Wright's Practice and Procedure treatise draw comparisons between factors appellate courts might utilize in deciding whether to recall a mandate and factors set out in Rule 60(b) empowering district courts to set aside judgments previously entered.  While there may be common considerations as to whether an appellate court should recall its mandate and a trial court set aside a judgment, that does not mean Rule 60(b) is applicable to the BAP.  In particular, this court has described one of the D.C. Circuit cases relied upon by the concurrence as supporting the following limited rule: "[A]n appellate court has power to set aside at any time a mandate that was procured by fraud or act to prevent an injustice, or to preserve the integrity of the judicial process.  Although the rule is stated in broad terms, the appellate courts have emphasized that the power to recall or modify a mandate is limited and should be exercised only in extraordinary circumstances." *Ute Indian Tribe of the Uintah & Ouray Reservation  v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997) (quotation and citations omitted).  No court, specifically including those cited in the concurrence, has ever considered whether each and every ground for relief set out in Rule 60(b) is also available as a ground for an appellate court to recall its mandate.  Likewise, no court has considered whether the limitations on granting relief set out in Rule 60 apply to an appellate court's discretion to recall its mandate.

Because resolution of the issue is not necessary to resolve this appeal, the parties' briefing of the issue is not remotely helpful or informative, and the resolution of the issue is far from clear, the better course would be to avoid opining on the issue. I offer up my own comments on the issue for the very limited purpose of providing some of the considerations indicating Fed. R. Civ. P. 60 does not apply to BAP proceedings.

12-1223 - *Evans v. Bank of New York Trust*

**HARTZ**, Circuit Judge, concurring:


I write separately to comment on an issue raised by appellant Evans but not addressed in the panel opinion.

Evans may be correct that Fed. R. Civ. P. 60 applies to BAP proceedings. Bankruptcy Rule 1001 states that the "Bankruptcy Rules and Forms govern procedure in cases under title 11 of the United States Code." One might assume that "cases" refers only to trial matters, not appellate proceedings. But Part VIII of the Rules sets forth rules for appeals to the district court or BAP, so such proceedings must have been considered by the enacters of the Rules as "cases under title 11." Moreover, Part IX of the Rules, which includes Rule 9024, includes no scope provision limiting its application to bankruptcy courts.[1] And the apparent anomaly of applying Rule 60 to the BAP is perhaps not so strange when one notes that the Federal Rules of Civil Procedure do not appear to exclude bankruptcy appeals to the district court from the district-court matters to which Rule 60 applies. *See* Fed. R. Civ. P. 81 (setting forth certain district-court proceedings to which the Rules of Civil Procedure do not apply or apply only in part); *cf. id.* Rule 81(a)(2) (stating, "[t]hese rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure," thereby

---

[1] I should also note that a local rule cannot override a Federal Rule of Bankruptcy Procedure.

coming full circle and leaving to the bankruptcy rules whether Rule 60 applies to bankruptcy appeals to the district court). It is thus not totally surprising that an unpublished opinion of the Ninth Circuit appears to have applied Rule 60 to a BAP proceeding, although without any analysis. *See Smith v. Webre (In re Smith)*, 335 F. App'x 667, 668 (9th Cir. 2009).

Although the rules committees may wish to clarify this point, almost nothing turns on it. The panel opinion in this case is limited in scope; it states only that a motion to set aside the BAP's prior sanctions order on the ground that the BAP lacked subject-matter jurisdiction is rejected for essentially the same reason whether the motion is considered to be a motion under Rule 60(b)(4) or a motion to recall the mandate. But the congruence between Rule 60 and the doctrine on recalling a mandate extends much further than just consideration of a challenge to subject-matter jurisdiction. The circumstances in which a mandate can be recalled that are discussed in *Greater Boston Television Corp. v. FCC*, 463 F.2d 268, 277–80 (D.C. Cir. 1971)—a decision we endorsed in *Ute Indian Tribe of Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997)—and in 16 Charles A. Wright, et al., Federal Practice and Procedure § 3938 (2d ed. 1996), are redolent of the circumstances set forth in Rule 60. I agree with the D.C. Circuit, which has "long treated motions to recall mandates as the equivalent of Rule 60(b) motions." *N. Cal. Power Agency v. Nuclear Regulatory Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004).